IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CHARLES W. GAINES                                                                                         PLAINTIFF

      v.      Civil No. 04-4134

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                                                   DEFENDANT

## MEMORANDUM OPINION

  Charles W. Gaines (hereinafter "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying his applications for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*, and for supplemental security income (hereinafter "SSI") benefits, pursuant to *§ 1602* of Title XVI*, 42 U.S.C. § 1381a.*

  Plaintiff, whose date of birth is April 1, 1969, was 35 years of age at the time of the April 1, 2004 administrative hearing (T. 198, 195-229). Plaintiff has an 8th grade education (T. 198). Despite his attempts to obtain his GED, he never passed the test (T. 199, 161). While in school, Plaintiff attended special education classes (T. 198, 98). Plaintiff's past relevant work includes: poultry worker; bakery worker; saw mill worker; recapper for a tire company; steelworker; tire service worker; and, construction worker (T. 18, 199-201, 79).

  Plaintiff alleges an inability to work due to: history of work-related back injury; history of lumbar laminectomy at L5-S1; failed back syndrome; chronic pain; fatigue; depression with thoughts of suicide; radiculopathy in the lower extremities; anxiety with panic attacks; loss of concentration; numbness; and, side effects of prescription pain medications. He

protectively filed his applications for benefits on June 12, 2002, alleging an onset of disability from November 1, 2001 (T. 48, 49-52, 183-186).

The Social Security Administration denied plaintiff's application initially and on reconsideration. Plaintiff then requested and received a hearing before an Administrative Law Judge (hereinafter "ALJ"), which hearing was held on April 1, 2004, before ALJ Lesly Mattingly in Texarkana, Arkansas (T. 195-229). The ALJ rendered a decision adverse to Plaintiff on May 28, 2004 (T. 13-21).

The Plaintiff then petitioned the Appeals Council for review on July 21, 2004 (T. 9). The Appeals Council denied review on September 2, 2004 (T. 5-8), thus making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of that unfavorable decision (Doc. #1, 8). This matter is before the undersigned by consent of the parties (Doc. #10).

**Applicable Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. See *Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)*. Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. See *Craig v. Apfel, 212 F.3d 433, 436 (8th Cir.2000)*. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, see *id.*, or because we would have decided the case

AO72A
(Rev. 8/82)

differently. See *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir.1993).

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b)*. If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926.* If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d)*. If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e)*. If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f)*. If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and

AO72A
(Rev. 8/82)

applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*. Such documentation, as referred to within the regulations, is referred to as the PRT factors, mentioned previously.

**Discussion:**

The ALJ evaluated the plaintiff's claim according to the five-step sequential evaluation analysis prescribed by the social security regulations. See *20 C.F.R. §§ 404.1520(a)-(f); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987)* (describing five-step analysis). At the first step, the ALJ found the plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 1, 2001 (T. 13, 49, 183). At the second step, the ALJ determined that the plaintiff had severe, medically determinable impairments, but no impairment or impairments that meet or equal the level of severity for any impairment listed in *Appendix 1, Subpart P, Regulations No. 4* (T. 13). See *20 C.F.R. § 404.1521; Bowen v. Yuckert, supra*. At Step 4 of the sequential analysis, the ALJ determined that Plaintiff retained the residual functional capacity to perform the full range of sedentary work, but could not return to his past relevant work (T. 17-20). The ALJ then determined, at the final step of the sequential analysis, that Plaintiff is not disabled as the VE testimony established that there are jobs in sufficient numbers which Plaintiff can perform (T. 19-20).

Plaintiff makes several arguments, however, the primary question before the undersigned is whether the ALJ properly considered Plaintiff's alleged lack of financial resources with which to obtain medication and treatment. In addition to this issue, it is noted that Plaintiff also argues that the ALJ: rendered a decision not supported by substantial

evidence; erred in finding Dr. Goins was not Plaintiff's treating physician; erred in failing to give proper weight to Dr. Goin's opinion; and, erred by failing to properly develop the record so as to clarify an ambiguity (Doc. #8, pp. 7-14).

Generally, if a claimant does not follow a prescribed treatment plan without a good reason, he or she will not be found disabled. *20 C.F.R. § 416.930(b) (1984)*. However, the lack of financial resources to pay for medical treatment and/or medication may justify the failure to pursue treatment or follow a treatment plan. *Brown v. Heckler 767 F.2d 451, 452 (8th Cir.1985);Tome v. Schweiker, 724 F.2d 711, 714 (8th Cir.1984)*. The ALJ does not discuss the impact of plaintiff's alleged lack of finances on his ability to access treatment. This constitutes error. To the extent the ALJ found plaintiff not entirely credible, due to a lack of medical treatment and/or prescription medication, we note numerous record citations in which the Plaintiff testified to and otherwise reported his lack of financial means. The record reflects through the medical evidence, the testimony and/or other reports: Plaitniff had no income and no money with which to obtain medical treatment and/or prescription medication (T. 214, 64, 131, 148, 177); he had no health insurance coverage to defray the cost of medical treatment and/or prescription medication (T. 214); he had no money with which to purchase his prescription pain medication, namely Oxycontin (T. 206, 222, 174, 175, 176); and, he sought treatment at UAMS, where medical care can be provided at a reduced rate (T. 125-130). Despite the numerous allegations of Plaintiff's inability to obtain treatment due to a lack of financial means, the ALJ failed to address this issue when determining that Plaintiff was not credible or disabled.

The ALJ also failed to discuss the Plaintiff's prescriptions for pain medication, namely

-5-

AO72A
(Rev. 8/82)

Oxycontin. Oxycontin is an opioid analgesic. Oxycontin is indicated for moderate to severe pain, where use of an opioid analgesic is appropriate for more than a few days. *Physicians' Desk Reference*, pp. 2537-2538 (54th Edition 2000). Plaintiff testified that he received relief of his pain with Oxycontin, but could not afford to take the medication. He not only made this allegation at hearing, but also reported his inability to pay for Oxycontin to his treating physician, who documented the report within his treatment notes. Such an allegation of inability to financially follow prescribed treatment should have been addressed by the ALJ within his decision. However, the ALJ's decision contains no mention of Plaintiff's alleged inability to obtain the prescribed Oxycontin.

Certainly, the failure to follow a prescribed course of treatment may be excused by a plaintiff's lack of funds. *Tome v. Schweiker, 724 F.2d at 714.* Likewise, medication or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered. To a poor person, a medicine that he cannot afford to buy does not exist. *Dover v. Bowen, 784 F.2d 335, 337 (8th Cir.1986); Benson v. Heckler, 780 F.2d 16, 18 (8th Cir.1985); Tome v. Schweiker, 724 F.2d at 714.*

Upon remand, the ALJ should consider and discuss what effect, if any, Plaintiff's alleged lack of financial means to obtain his prescribed pain medication, Oxycontin, had on the Plaintiff's claim for disability, as well as Plaintiff's credibility.

The undersigned acknowledges that the ALJ's decision may be the same after proper analysis. Nonetheless, proper analysis must occur. *Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir. 1991).*

AO72A
(Rev. 8/82)

**<u>Conclusion</u>:**

Accordingly, we conclude that the ALJ's decision denying DIB and SSI benefits to the plaintiff is not supported by substantial evidence and should be reversed. We further conclude that this matter should be remanded to the Commissioner for further consideration consistent with this decision.

ENTERED this 30th day of November, 2005.

        /s/Bobby E. Shepherd
        Honorable Bobby E. Shepherd
        United States Magistrate Judge

AO72A
(Rev. 8/82)